# In the United States Court of Federal Claims

No. 17-100V

(Filed Under Seal: December 14, 2018 | Reissued: January 2, 2019)*

| | |
|---|---|
| EUGENIO PAULO DE SOUZA, | ) Keywords: Vaccine Act; Attorneys' Fees; |
| | ) Reasonable Attorneys' Fees; Costs; |
| Petitioner, | ) Lodestar; Forum Fee; Abuse of |
| | ) Discretion; <u>Davis County</u> Exception. |
| v. | ) |
| | ) |
| SECRETARY OF HEALTH AND HUMAN | ) |
| SERVICES, | ) |
| | ) |
| Respondent. | ) |
| | ) |

*Carol L. Gallagher*, Carol L. Gallagher, Esquire LLC, Linwood, NJ, for Petitioner.

*Voris E. Johnson, Jr.*, Senior Trial Attorney, Torts Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *C. Salvatore D'Alessio*, Acting Director, and *Catharine E. Reeves.*, Deputy Director, for Defendant.

## OPINION AND ORDER

**KAPLAN, J.**

Petitioner Eugenio Paulo De Souza ("Mr. De Souza" or "Petitioner") seeks review of an attorneys' fee award issued by Special Master Christian J. Moran which arose out of a claim that Mr. De Souza filed under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 ("the Vaccine Act"). In his claim, Mr. De Souza alleged that he developed Guillain-Barré syndrome as a result of an influenza vaccination. The case was ultimately settled on the merits, after which the special master issued an award of attorneys' fees and costs.

On July 27, 2018, Petitioner filed a motion for review of the special master's decision regarding attorneys' fees and costs. In his motion, Petitioner challenges (1) the special master's

---

* This opinion was previously issued under seal on December 14, 2018. The parties were given the opportunity to propose redactions on or before December 28, 2018. Having received no proposed redactions from either party, the Court resissues its decision without redactions.

failure to award fees calculated on the basis of forum rates; and (2) the special master's decision to reduce by 35% the number of hours claimed for the services of his attorney, Carol Gallagher.

For the reasons set forth below, the Court finds that the special master erred in failing to use the forum rate claimed for Ms. Gallagher's services but that he acted within his considerable discretion in reducing her claimed hours by 35%. Petitioner's motion for review is, accordingly, **GRANTED-IN-PART** and **DENIED-IN-PART**.

## BACKGROUND

### I.      Procedural Background

Mr. De Souza filed his petition for compensation with the Secretary of Health and Human Services on January 23, 2017. ECF No. 1. The case was initially assigned to Chief Special Master Nora B. Dorsey. ECF No. 4.

On July 21, 2017, the government filed a response to Mr. De Souza's petition pursuant to Vaccine Rule 4(c), Appendix B of the Rules of the Court of Federal Claims ("RCFC"). ECF No. 16. It recommended that the petition be denied. Id. at 9.

On August 2, 2017, the case was reassigned to Special Master Moran. ECF No. 18. The parties then engaged in settlement discussions throughout the fall of 2017. See ECF Nos. 25, 32. On December 5, 2017, they informed the special master that they had reached a tentative settlement agreement. ECF No. 32. The parties then filed a stipulation for award on January 24, 2018. ECF No. 35. Per that stipulation, the government denied that the influenza vaccine caused Mr. De Souza's injuries, but nonetheless agreed to pay a lump sum of $70,000 to Mr. De Souza. Id. at 2. Special Master Moran adopted the stipulation in a January 26, 2018 decision. ECF. No. 36.

### II.     The Special Master's Award of Attorneys' Fees and Costs

On March 15, 2018, Mr. De Souza filed a motion for an award of attorneys' fees in the amount of $32,993.50. ECF No. 41 & Ex. A, ECF No. 41-1. He also requested reimbursement of $135.37 in costs he incurred and $514.55 in costs borne by his attorney. Id. Ex. B & C, ECF Nos. 41-2 & 41-3.

On July 3, 2018, Special Master Moran issued a decision on the motion. Unpublished Decision Awarding Att'ys' Fees & Costs ("SM Decision"), ECF No. 43. In his decision, the special master awarded costs in full but significantly reduced the amount of attorneys' fees below that requested by Petitioner. See generally id.

Special Master Moran began his opinion by observing that in Vaccine Act cases, the special master must apply the "lodestar approach," under which he "multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate." Id. at 2 (quoting Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008)). He noted that under applicable precedent, special masters are generally required to use the forum (i.e., District of Columbia) rate in the lodestar calculation. Id. (citing Avera, 515 F.3d at 1349). He explained, however, that there is "an exception (the so-called Davis County exception) to this general rule

when the bulk of the work is done outside of the District of Columbia and the attorneys' rates are substantially lower." Id. at 3 (citing Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA, 169 F.3d 755, 758 (D.C. Cir. 1999) (forum rate does not apply "where the bulk of the work is done outside the jurisdiction of the court and where there is a very significant difference in compensation favoring D.C.")). Special Master Moran then observed that in this case Ms. Gallagher's work was done outside of the District of Columbia. Id.

Mr. De Souza had requested that the special master apply the forum rates set forth in the Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedules ("OSM Fee Schedule").[1] The special master, however, did not do so. Instead, he noted that the hourly rates claimed ($350, $363, and $400 for work in 2016, 2017, and 2018 respectively) "exceed[ed] what some special masters have awarded" for Ms. Gallagher's services in other cases. Id. at 3. In his view, it was appropriate to treat Gonzalez v. Secretary of Health and Human Services, No. 14-1072V, 2015 WL 10435023 (Fed. Cl. Spec. Mstr. Nov. 10, 2015) as "[t]he foundational decision for Ms. Gallagher's hourly rate." SM Decision at 3.

In Gonzalez, the parties had agreed that "the generally prevailing local billing rate [for the Linwood, New Jersey market in which Ms. Gallagher practices] is considerably lower than the forum rate" and that, because the work in the case had been performed outside of the forum, the local rate should be used. 2015 WL 10435023, at *9. The special master in Gonzalez found $315 per hour a reasonable local rate for Ms. Gallagher's services for work performed in 2015. Id. at *12. In Special Master Moran's view, the Gonzalez decision was more persuasive than others in which a higher rate was awarded for Ms. Gallagher's services because the other decisions "lack[ed] the detailed analysis found in Gonzalez." Id. at 3 n.2.

Special Master Moran determined Ms. Gallagher's 2016–2018 rates by starting with Gonzalez's $315 per hour rate as a baseline and then adjusting upwards according to the PPI-OL calculation. Id. at 3–4 (finding $318 a reasonable hourly rate for 2016, $327.30 a reasonable hourly rate for 2017, and $338.33 a reasonable hourly rate for 2018).[2]

In determining a reasonable number of hours worked, the second factor in the lodestar formula, Special Master Moran found that "Ms. Gallagher's timesheets present little information that demonstrates the reasonableness of her activities." Id. at 5. In particular he noted that "many entries are something like 'Preparation of e-mail to client,'" which he found vague because the purpose or the topic of the email was not specified. Id. He further determined that "[g]iven the

---

[1] As described in greater detail below, the OSM Fee Schedule establishes ranges of hourly rates in the District of Columbia for attorneys of varying levels of experience for the purpose of evaluating attorneys' fees awards in vaccine cases. See Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedules, http://www.uscfc.uscourts.gov/node/2914 (last visited Dec. 10, 2018).

[2] The Producer Price Index-Offices for Lawyers ("PPI-OL") accounts for inflation. SM Decision at 3–4; see also 2018 OSM Schedule at 1 n.3 ("Special masters have found the PPI-OL to be persuasive as a measure of inflation.").

posture of the case, it is likely that a paralegal could have handled the communication, especially when the topic concerned gathering medical records." Id.

The special master also observed that Ms. Gallagher had been criticized in other cases "for charging attorney rates for work that a paralegal or secretary could perform and for creating entries that are so vague that their reasonableness cannot be easily assessed." Id. (citing Ploughe v. Sec'y of Health & Human Servs., No. 14-626V, 2017 WL 4455632, at *4 (Fed. Cl. Spec. Mstr. Sept. 11, 2017); Gonzalez, 2015 WL 10435023, at *13–14). He noted that "Ms. Gallagher has previously [been] informed about the deficiencies in how she records her time and, it appears that, Ms. Gallagher has not changed her practice." Id. Furthermore, he stated that "to the extent information about Ms. Gallagher's work can be gleaned from the timesheets, much of the work could have been performed by a paralegal . . . and some work appears to be clerical for which there should be no charge." Id. "Under these circumstances," Special Master Moran concluded, "a reasonable estimate of the number of hours to reduce is 35 percent." Id. at 5–6.

## III.   The Motion for Review

Mr. De Souza filed a motion for review of Special Master Moran's fee determination on July 27, 2018. ECF No. 47. Four days later, Special Master Moran issued a notice in which he identified two errors made in his fee calculation. Notice ("SM Notice"), ECF No. 49. First, he noted that "Ms. Gallagher's rate of $318 for 2016 should have been $324 (3% more than the baseline rate of $315 for 2015)." Id. at 1. Therefore, the correct rates for 2017 and 2018 would be $334 and $344, respectively. Id. at 1–2. Second, the special master observed that in calculating the fee award he had incorrectly reduced the total number of hours awarded to 35% of the original request, rather than reducing the number of hours billed by 35% as he had intended. Id. at 2. With the two errors corrected, Special Master Moran stated that the total attorneys' fee award should have been $19,618.95 rather than $10,357.86. Id. at 1–2.

The government filed a motion to remand the case back to the special master to allow him to reissue his decision with the mathematical errors corrected. ECF No. 50. The Court denied the government's request for remand as unnecessary and inefficient, observing that it could take note of the corrected figures in its review. ECF No. 52.

The government filed its response to the Petitioner's motion for review on August 27, 2018. ECF No. 53. The Court has determined that oral argument is unnecessary and that the motion for review should be decided on the briefs.

## DISCUSSION

## I.   Jurisdiction and Standard of Review

Congress established the National Vaccine Injury Compensation Program in 1986 to provide a no-fault system to compensate persons who suffer vaccine-related injuries and deaths. Figueroa v. Sec'y of Health & Human Servs., 715 F.3d 1314, 1316–17 (Fed. Cir. 2013). A petition seeking compensation under the Vaccine Act is filed in the Court of Federal Claims, after which the Clerk of Court forwards it to the chief special master for assignment to a special master. 42 U.S.C. § 300aa-11(a)(1). The special master to whom the petition is assigned "issue[s] a decision on such petition with respect to whether compensation is to be provided

under the [Vaccine Act] Program and the amount of such compensation." Id. § 300aa-12(d)(3)(A). The Vaccine Act further provides that "the special master . . . may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs . . . if the special master . . . determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. § 300aa-15(e)(1).

If a party files a motion for review of a decision of a special master, the Vaccine Act grants the Court of Federal Claims jurisdiction to review the record of the proceedings before the special master and authority, upon such review, to:

> (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
> (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
> (C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2); see also RCFC Vaccine Rule 27.

The Court "review[s] a decision of the special master . . . [to] determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Avera, 515 F.3d at 1347 (quoting 42 U.S.C. § 300aa-12(e)(2)(B)). "In Vaccine Act cases . . . contesting a special master's determination of reasonable attorney's fees, the applicable standard of review is abuse of discretion." Scharfenberger v. Sec'y of Health & Human Servs., 124 Fed. Cl. 225, 231 (2015) (citing Hall v. Sec'y of Health & Human Servs., 640 F.3d 1351, 1356 (Fed. Cir. 2011)). Under this highly deferential standard, "[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." Hines ex rel. Sevier v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 1518, 1528 (Fed. Cir. 1991).

## II.     Legal Standards for the Determination of Fee Awards

### A.     <u>The Lodestar Approach</u>

The Federal Circuit has "endorsed the use of the lodestar approach to determine what constitutes 'reasonable attorneys' fees' under the Vaccine Act." Avera, 515 F.3d at 1347 (citing Saxton ex rel. Saxton v. Sec'y of Dep't of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993)). Under that approach, the special master or the court "first determines an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347–48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)); see also Hall, 640 F.3d at 1353. The fee applicant bears the burden of proving that the number of hours submitted for payment is reasonable; further, hours that are "excessive, redundant, or otherwise unnecessary" will not be compensated. See Hensley v. Eckerhart, 461 U.S. 424, 434, 437 (1983). A reasonable rate is "'the prevailing market rate,' defined as the rate

'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Avera, 515 F.3d at 1348 (quoting Blum, 465 U.S. at 896 n.11).

### B. <u>Forum Rates and the Davis County Exception</u>

To determine a reasonable hourly rate for attorneys' fees in vaccine cases, special masters should generally use the forum rates in their lodestar calculations. Avera, 515 F.3d at 1348. For Vaccine Act cases, the forum is the District of Columbia, which is where the Court of Federal Claims is located. Id.

The OSM Fee Schedule establishes ranges of hourly rates in the District of Columbia for attorneys of varying levels of experience for the purpose of evaluating attorneys' fees awards in vaccine cases. See OSM Fee Schedules; see also McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323, at *18–19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) (setting forth the fee ranges eventually incorporated into the first OSM Fee Schedule setting rates for 2015–2016). All sitting special masters endorsed the OSM Fee Schedule in October 2016. Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2018 ("2018 OSM Fee Schedule") at 1 n.2, https://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf (last visited Dec. 13, 2018).

The Federal Circuit, however, has recognized a "limited exception" to the forum rule in cases where the bulk of the work in the case is performed outside of the forum and where there is a "very significant" difference between the forum rate and the local rate. Avera, 515 F.3d at 1349 (citing Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA, 169 F.3d 755, 758–60 (D.C. Cir. 1999) (per curiam)). This limitation on the general rule—known as the "Davis County" exception (in recognition of the case from which it originates)—is designed to prevent windfalls and avoid "the occasional erratic result where the successful petitioner is vastly overcompensated." Id. (quoting Davis Cty., 169 F.3d at 758); see also Biery v. United States, 818 F.3d 704, 710 (Fed. Cir. 2016) (observing that "[u]ltimately, a fee award must 'be adequate to attract competent counsel,' but must not 'produce windfalls to attorneys'") (quoting Hensley, 461 U.S. at 444), cert. denied, 137 S. Ct. 389 (Mem.) (2016).

## III.   The Special Master's Reduction in the Requested Hourly Rate

Mr. De Souza contends that Special Master Moran committed legal error when he failed to determine whether the hourly rate claimed for Ms. Gallagher's services was consistent with the forum rates set forth in the OSM Fee Schedule. Mot. for Review at 6–10. Instead, the special master relied upon a decision—Gonzalez—which preceded the establishment of the OSM Fee Schedule and in which the rate used for Ms. Gallagher's services was derived from the market in New Jersey where Ms. Gallagher practices law. The Court agrees that the use of the local market rate was inconsistent with applicable precedent.

Special Master Moran recognized that under Avera the general rule is that attorneys' fees are calculated at forum (D.C.) rates. SM Decision at 2. He also acknowledged the Davis County exception to this rule which provides that local markets should be used to determine the

appropriate rate where the bulk of the work is performed outside of the District of Columbia and where there is a substantial (or "very significant") difference between forum and local rates. Id. at 3. But while he made a determination that in this case Ms. Gallagher performed her services outside of the District of Columbia, he failed to decide whether the second prerequisite to invocation of the Davis County exception was met—i.e., he did not compare forum rates to local rates to determine if there was a "significant difference" between the two. Had he done so, he would necessarily have concluded that the rates claimed for Ms. Gallagher's services were consistent with the forum rates set forth in OSM's own tables, and that there was only a relatively minor difference between those rates and the local rates he found reasonable.

Ms. Gallagher has been practicing law for twenty-three years as of December 2018. See Mot. for Att'y Fees & Costs at 1; 2018 OSM Fee Schedule at 3 n.8. In the motion for attorney's fees, Petitioner requests $350 per hour for Ms. Gallagher's services during 2016, $363 per hour for 2017, and $400 per hour for 2018. Mot. for Att'y Fees & Costs at 4. These requested rates are consistent with the reasonable forum rates provided in the 2016, 2017, and 2018 OSM Fee Schedules, which set forth the following rates for attorneys with twenty to thirty years of experience: 1) $350–$415 per hour for 2016; 2) $358–$424 per hour for 2017; and 3) $370–$439 per hour for 2018. See OSM Fee Schedules.

Nonetheless, instead of applying forum rates, Special Master Moran applied the local rates for Ms. Gallagher's services used in Gonzalez. SM Decision at 3. He characterized the analysis of the applicable local rate in that case as "thorough[]" and "persuasive." Id.[3] He concluded on the basis of that decision that a reasonable rate for Ms. Gallagher's services would be $324 per hour for 2016, $334 per hour for 2017, and $344 per hour for 2018. SM Notice at 1–2.

The differences between the forum rates claimed by Petitioner under the OSM Fee Schedule and the rates that Special Master Moran found reasonable are $26 per hour for 2016, $29 per hour for 2017, and $56 per hour for 2018. Compare Mot. for Att'y Fees & Costs at 4 with SM Notice at 1–2. The forum rates, in other words, are somewhere between 10–15% higher than the applicable local rates. These are not "very significant" differences sufficient to justify the application of the Davis County exception. Cf. Hall, 640 F.3d at 1355–57 (declining to set a bright line threshold for what constitutes a significant difference but upholding a special master's determination that a 59% difference was significant); Avera, 515 F.3d at 1350 (awarding local rates where "the prevailing market rate in the District of Columbia is nearly three times the prevailing market rate in Cheyenne"); Davis Cty., 169 F.3d at 757 (awarding local rates for Salt Lake City, Utah where D.C. rates "appear[ed] to be approximately 70% higher"); Garrison v. Sec'y of Health & Human Servs., 128 Fed. Cl. 99, 108 (2016) (affirming special master's finding

---

[3] Petitioner disagrees with the Special Master's reliance upon Gonzalez, observing that the rate the special master approved in that case was inconsistent with the higher local rates for Ms. Gallagher's services that were approved by other special masters. Mot. for Review at 8–10. The Court finds it unnecessary to address Petitioner's arguments regarding whether the local rates applied in Gonzalez were unreasonably low given its determination that Petitioner is entitled in any event to recover fees at forum rates.

that the <u>Davis County</u> exception did not apply where there was only an 18.5% difference between the D.C. forum rate and the rates in Twin Falls, Idaho).

In short, providing awards at the forum rates established by the Office of Special Masters can hardly be characterized as a "windfall" that would result in Ms. Gallagher being "vastly overcompensated." See <u>Davis Cty.</u>, 169 F.3d at 760, 768. Therefore, Ms. Gallagher's services should have been compensated at the requested hourly rates of $350 per hour for 2016, $363 per hour for 2017, and $400 per hour for 2018. This error accounts for a $1,826.83 reduction from Petitioner's original request. Accordingly, the Court finds that the special master's reduction in Ms. Gallagher's hourly rate was arbitrary, capricious, and contrary to established case law.

## IV.    Reduction in Hours

In addition to reducing the hourly rate for Ms. Gallagher's services, the special master also imposed an across-the-board 35% reduction in the number of hours Petitioner proposed be used in the lodestar. SM Decision at 5–6. He imposed the reduction because, as described above, he found that "Ms. Gallagher's timesheets present[ed] little information that demonstrates the reasonableness of her activities." <u>Id.</u> at 5. For example, he noted, a significant portion of the entries recorded emails between Ms. Gallagher and her client, without specifying the subject of the communications. <u>Id.</u> Special Master Moran found that "[g]iven the posture of the case, it is likely that a paralegal could have handled the communication, especially when the topic concerned gathering medical records." <u>Id.</u> Furthermore, he observed, in past cases Ms. Gallagher had been "criticized for charging attorney rates for work that a paralegal or secretary could perform and for creating entries that are so vague that their reasonableness cannot be assessed." <u>Id.</u> (citing <u>Ploughe</u>, 2017 WL 4455632, at *4; <u>Gonzalez</u>, 2015 WL 10435023, at *13–14).

"It [is] well within the special master's discretion to reduce the hours to a number that, in his experience and judgment, [is] reasonable for the work done." <u>Saxton</u>, 3 F.3d at 1521; <u>see also</u> <u>id.</u> at 1521–22 (A special master's "past experience is a relevant factor and should be taken into account" when deciding whether to reduce requested attorneys' fees.) (citing <u>Hensley</u>, 461 U.S. at 430 n.3; <u>Slimfold Mfg. Co. v. Kinkead Indus., Inc.</u>, 932 F.2d 1453, 1459 (Fed. Cir. 1991)). Further, special masters "need not, and indeed should not, become green-eyeshade accountants" when determining attorneys' fees. <u>Fox v. Vice</u>, 563 U.S. 826, 838 (2011). The goal "is to do rough justice, not to achieve auditing perfection." <u>Id.</u> Therefore, it is within the special master's discretion to reduce the number of hours submitted by a percentage of the amount charged. <u>See,</u> <u>e.g.</u>, <u>Broekelschen v. Sec'y of Health & Human Servs</u>, 102 Fed. Cl. 719, 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours).

In his motion for review, Mr. De Souza complains that the special master's 35% across-the-board reduction in claimed hours was arbitrary because "petitioner's [attorney's] email communications totaled only 8.5% of her bill, which included emails with respondent." Mot. for Review at 17 (emphasis omitted). But the Court has performed its own review of Ms. Gallagher's time records and found that approximately 25% of the hours listed correspond to emails sent or received by Ms. Gallagher, with no explanation of their subject. <u>See generally</u> Mot. for Att'y Fees and Costs, Ex. A. If the Court adds vague correspondence entries, then the unexplained communications go up to 30% of the hours claimed. <u>See id.</u> And there are other

entries in the time sheets that are similarly vague which bill for telephone calls to Mr. De Souza, his interpreter, and/or his wife. See id.

The Court finds that the special master acted within his considerable discretion in finding these vague entries inadequate to support an award of fees. See Avgoustis v. Shinseki, 639 F.3d 1340, 1344 (Fed. Cir. 2011) (finding, consistent with Supreme Court and Federal Circuit precedent, Veterans Court decisions that contained "entries in attorney timesheets such as 'writing to client,' 'reviewing Court's notice of docketing,' 'reviewing litigation file,' '[t]elephone conversations with VA counsel,' and 'faxing materials to VA counsel' were 'too vague and lacking in detail to permit effective review of the application' because they do 'not adequately identif[y] the purpose of these activities'") (alterations in original) (quoting McDonald v. Nicholson, 21 Vet. App. 257, 264 (2007)).

Finally, Petitioner contends that Special Master Moran's decision must be found arbitrary because in another case he found Ms. Gallagher's timesheets "'sufficiently detailed that her activities are understandable[,]'" even though her entries regarding her email correspondence in that case were allegedly "identical to the entries for emails in this case." Mot. for Review at 14 (emphasis omitted) (quoting Kirdzik v. Sec'y of Health & Human Servs., No. 15-0098V, 2016 WL 4608171 (Fed. Cl. Spec. Mstr. Aug. 10, 2016)). But contrary to Petitioner's contention, the special master reached similar conclusions in Kirdzik regarding (1) her billing of paralegal work at attorney rates; and (2) her billing for administrative and clerical work, which cannot be reimbursed. 2016 WL 4608171, at *2. Further, the fact that the special master was more tolerant of some of the vague entries billed in Kirdzik does not render his more rigorous approach in this case an arbitrary one. Each attorney fee determination stands or falls on its own merits. Because the special master acted within his discretion in reducing the hours claimed in this case in light of the vagueness of the entries on counsel's timesheet, his decision must be affirmed in this regard.

## V.      Attorneys' Fees for Work on the Motion for Review

Mr. De Souza, through counsel, now seeks an additional $15,580.00 in attorneys' fees for 38.95 hours spent drafting the motion for review. Mot. for Review at 20; Ex. 3 at 3, ECF No. 47-3. The timesheets submitted in connection with this request are more detailed than those submitted to the special master and provide a sufficient basis for this Court to find that the hours requested represent work necessarily performed by an attorney. See generally id. Ex. 3. In addition, for the reasons set forth above, the Court finds that it is reasonable to base the fee award on the $400 per hour forum rate.

The Court finds, however, that it is appropriate to reduce the proposed award by 50% because the Court has denied the bulk of the relief requested in the motion. To be sure, the Court will generally not reduce fees simply "because the [Petitioner] failed to prevail on every contention raised." Hensley, 461 U.S. at 435. However, if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended . . . times a reasonable hourly rate may be an excessive amount." Id. at 436. The Supreme Court has therefore emphasized that "the most critical factor is the degree of success obtained." Id. "There is no precise rule or formula for making these determinations. . . .  [The Court] may simply reduce the award to account for the limited success . . . [and] necessarily has discretion in making this equitable judgment." Id. at 436–37.

In this case, Mr. De Souza's challenge to the special master's erroneous decision to apply the local rather than forum rate resulted in a $1,826.83 increase in the amount of the fee award. On the other hand, Mr. De Souza was not successful in his challenge to the special master's decision to reduce by 35% the hours claimed by his attorney. Had he been successful with respect to that claim, the fee award would have been increased by an additional $11,547.72. As such, when measured in strictly monetary terms, Petitioner only secured about 14% of the relief he sought in the motion for review.

On the other hand, when measured by the extent to which Mr. De Souza prevailed with respect to the two primary legal errors identified in the motion for review, he had a 50% success rate. And the issue on which he prevailed—which concerns the appropriate hourly rate for counsel's services—has ramifications for his counsel beyond this case. Accordingly, the Court will reduce the proposed fee award by 50%, resulting in an award of $7,790 for attorneys' fees in connection with the motion for review.

## CONCLUSION

For the foregoing reasons, the Petitioner's motion for review is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Clerk is directed to enter judgment as follows:

1. A lump sum of $29,750.33 in the form of a check made payable to Petitioner and Petitioner's attorney, Carol L. Gallagher, Esq., for attorneys' fees and costs available under 42 U.S.C. § 300aa-15(e).

2. A lump sum of $135.37 in the form of a check made payable to Petitioner alone for costs available under 42 U.S.C. § 300aa-15(e).

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge